Anjali J. Patel SBN 28138
Christina Locher SBN 027472
**Tyler Allen Law Firm, PLLC**
4201 North 24th Street, Suite 200
Phoenix, AZ 85016
602-456-0545 telephone
602-995-3999 fax
anjali@allenlawaz.com
christina@allenlawaz.com
*Attorneys for Plaintiff Steven Bartel*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Steven Bartel,<br><br>                              Plaintiff,<br><br>v.<br><br>The City of Tempe, an Arizona Municipal Corporation;<br><br>                              Defendant. | No. <br><br>**COMPLAINT**<br><br>**(1) Discrimination Based upon Sex in Violation of Title VII (42 U.S.C. §§ 2000e *et seq.*)**<br><br>**(2) Retaliation in Violation of Title VII (42 U.S.C. §§ 2000e *et seq.*)**<br><br>**(3) Age Discrimination under ADEA (29 U.S.C. §621 *et. seq.*)**<br><br>**(4) Violations of Recordkeeping under the FLSA (29 U.S.C. §211(c))**<br><br>**(5) Retaliation under the FLSA (29 U.S.C.A. §215(a)(3))**<br><br>**(6) Title IX Violation (20 U.S.C. §1681(a))**<br><br>**(Jury Trial Demanded)** |

Plaintiff Steven Bartel ("Plaintiff"), by and through undersigned counsel, for his Complaint against the Defendant, the City of Tempe, an Arizona Municipal Corporation (the "City") hereby alleges as follows.

**Preliminary Statement**

1.    Plaintiff, Steven Bartel brings this action against Defendant, City of Tempe, for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq.,* ("Title VII") which prohibits discrimination against an individual "with respect to the individual's compensation, terms, conditions or privileges of employment because of the individual's race, color, religion, sex age or national origin[.]"

2.    Plaintiff further brings this action against Defendant for violations of the Age Discrimination in Employment Act ("ADEA") the Fair Labor Standards Act of 1938 ("FLSA") and Title IX, 20 U.S.C. §1681(a).

3.    Defendant, while Plaintiff's employer, discriminated against Plaintiff on the basis of Plaintiff's sex (male) and age (over 40) and retaliated against Plaintiff for his reports of same and for disclosing the Defendant's ongoing FLSA violations.

4.    Defendant retaliated against Plaintiff by falsely alleging misconduct and unsatisfactory performance, and then terminated Plaintiff in retaliation for his complaints just four (4) days after Plaintiff's meeting with Defendant's Human Resources representatives regarding his complaint. Plaintiff has suffered damages including lost wages and emotional distress as a result of Defendant's actions.

**Parties**

5.    Plaintiff, Steven Bartel is an individual male over the age of forty (birth year 1953) and a resident of Maricopa County, Arizona.

6.    Defendant City of Tempe is an Arizona municipal corporation operating in Maricopa County, Arizona, and is Plaintiff's former employer.

7.    Plaintiff was employed by the City of Tempe in the Experience Corps, AARP Foundation, from August of 2022 until the date of his termination on or about September 19, 2023.

8.    Defendant City of Tempe engages in an industry affecting interstate commerce and has at least fifteen (15) employees for each working day in at least twenty (20) calendar weeks of this year and at all times relevant to the allegations in this Complaint.

9.   At all times relevant hereto, Defendant is and has been an employer as defined under Title VII, the ADEA and the FLSA, and is accordingly subject to the provisions of each said act.

**Jurisdiction and Venue**

10.   This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e), *et seq.*, as amended by the Civil Rights Act of 1991 ("Title VII"), the Age Discrimination in Employment Act ("ADEA") and the Fair Labor Standards Act of 1938 ("FLSA"), and Title IX, 20 U.S.C. §1681(a) *et. seq.*

11.   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this is a civil action arising under federal law involving a federal question.

12.   At all times relevant hereto, Defendant City of Tempe was acting through its agents, servants, and employees, who were acting within the scope of their authority, course of their employment, and under the direct control of Defendant.

13.   Defendant, upon information and belief, is the recipient of federal financial assistance.

14.   Defendant caused events or omissions in Arizona that gave rise to Plaintiff's damages and are, for that and other reasons, subject to the personal jurisdiction in this Court.

15.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because all the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

**Allegations**

16.   Plaintiff first began working for Defendant which operates Experience Corps AARP Foundation as a volunteer tutor in September of 2019.

17.   Plaintiff was hired in or about late 2018 or early 2019 and began his training in August 2019 for the 2019 – 2020 academic school year.

18.   Upon information and belief, Defendant, through Experience Corps, Tempe, receives federal funds, including ESSER Funds, for Covid relief.  Experience Corps is headquartered in Washington D.C.

19.   Each of Plaintiff's performance reviews over three-year period as an

3

Experience Corps volunteer, from fall of 2019 through summer of 2022 were the highest possible evaluation for each category within each performance review, for both mid-year and end-of-year reviews.

20.    Following demonstrated success in his role as a volunteer, Plaintiff was hired and began a paid position with Defendant in August of 2022 as a Site Specialist with Experience Corps, AARP Foundation, at the rate of $24.00 per hour.

21.    Plaintiff was hired in his role as a non-exempt, part-time employee, working 29 hours per week.

22.    Plaintiff planned to work for Defendant until he was 74 or 75 years old.

23.    Plaintiff had never been terminated from a job over the life of his approximate forty (40) years of full-time employment until Defendant unlawfully terminated his employment on or about September 19, 2023.

24.    In or around the fall of 2022, Plaintiff was recognized by Defendant on a national level, and was chosen as the Tutor of the Month, which was a first-time occurrence for Tempe, Arizona's Experience Corps location.

25.    During his first month as a paid employee, Plaintiff began to experience disparate treatment by his direct supervisor and a co-worker. In September of 2022, Plaintiff's colleague, Ms. Pamela Bell, publicly and verbally berated Plaintiff in the presence of other tutors at the fall fingerprinting event.

26.    Plaintiff was disturbed and humiliated by Ms. Bell's behavior and subsequently spoke with his supervisor, Ms. Nicole Burner, but his complaints were dismissed. Ms. Burner only responded, "She [Ms. Bell] must be stressed."

27.    Ms. Bell, who often proudly boasted that her Supervisor, Ms. Burner was her best friend, publicly berated Plaintiff on two other separate occasions, once on or about February 6, 2023, in front of more than 15 tutors and colleagues, and again on or about August 17, 2023, in front of the Plaintiff's colleagues.

28.    Plaintiff noted that none of his female colleagues were subjected to similar treatment from Ms. Bell.

4

29.    Ms. Bell often went out of her way to berate Plaintiff and even when others were not around, she would stick her finger directly in Plaintiff's face, and speak to him in a raised voice and condescending tone.

30.    Ms. Bell would intermittently throughout Plaintiff's tenure complain about her husband and men in general for Plaintiff and others to hear.

31.    Ms. Bell further informed Plaintiff that her husband was "jealous" of Plaintiff after she had told her husband that she shared an office with Plaintiff and showed her husband a photo of Plaintiff, which caused Plaintiff to feel uncomfortable.

32.    Shortly into his employment, Plaintiff observed that his assignments and responsibilities exceeded that of all other Site Specialists as well as the Lead Site Specialist for both Spring and Fall semesters of 2023, during which Plaintiff was assigned a greater number of schools and tutors.

33.    Despite his workload, Plaintiff volunteered to take on the additional responsibility for reference-checking each of the potential tutor hires in late fall of 2022 and throughout the spring and early fall of 2023.

34.    As a new employee, Plaintiff exceeded 58 hours in a pay period in order to complete Fall semester startup tasks which he was directed by Defendant to perform, and did in fact perform.

35.    Thereafter, Plaintiff was told by Ms. Burner to only record 58 hours rather than the total number of hours Plaintiff had actually worked, and to work less the following pay period to make up for it.

36.    From approximately January through May of 2023, based upon scheduled hours, Plaintiff was assigned more schools, more tutors and more new tutors than both the Senior Site Specialist and each of the other  Site Specialists, each of whom are female, and significantly more than Defendant's other part-time Site Specialists.

37.    In or around January of 2023, Plaintiff volunteered to take on one of Karen McNally's assigned schools, not originally assigned to Plaintiff, in order to relieve her to focus on her increased data management responsibilities following the departure of a

colleague.

38.    During the spring of 2023, Plaintiff's workload and number of school responsibilities were approximately twice that which were assigned to any other female Site Specialists.

39.    In or around June of 2023, Plaintiff was also assigned the planning, organization, implementation and maintenance of books and materials used for teaching students along with teaching supplies required of the Site Specialists and tutors.

40.    Following a July meeting in 2023, Ms. Darcy Zeiger, Plaintiff's new supervisor effective late April 2023, shared with the Site Specialists the new staffing layout for schools and tutor responsibilities for the upcoming Fall 2023 semester. One significant change from the Spring semester was that each site Specialist would be responsible for her or his own data input.

41.    Site Specialists were provided a chart showing their assigned schools and number of tutors. Ms. Zeiger identified Plaintiff and Ms. Heath, as Site Specialists having an excessive workload for their respective hours assigned per week.

42.    Considering the number of schools, number of tutors, and other workload measurements,  Plaintiff's workload exceeded that of all other Site Specialists when compared on a per hour basis.

43.    During his tenure, Plaintiff voiced concerns about how his 29 hours were calculated for part-time classification compared to the full-time colleagues with a 30-hour work week.

44.    In or about late fall of 2022, Plaintiff asked for the first time, how full-time and part-time hours were calculated by Defendant and over what period of time. Ms. Burner responded that she would get back to the Plaintiff, but did not do so.

45.    In or about mid- to late November of 2022, Ms. Heath, an hourly employee of Defendant, mentioned she had been working significantly more hours than forty (40) hours per week, and that she was keeping track of the hours she spent working over 40 hours per week so she could use them later. Ms. Bell told her not to do that, but to talk to

1  Ms. Burner.

2      46.    On or about December 14, 2022, Plaintiff attended a lunch meeting, which

3  functioned as a staff training and holiday party, at the home of coworker Karen McNally.

4  Plaintiff was the only male employee in attendance at the party.

5      47.    Those in attendance included Supervisor, Nicole Burner, Site Specialists

6  Karen McNally, Pamela Bell,  Rebecca Alvarez,  Allison Burke,  Lead Site Specialist

7  Candace Heath and a regional Experience Corps representative from the national office in

8  Washington D.C and former City Supervisor with Experience Corps in Tempe, Peggy

9  Goldberg.

10      48.    During the party, Ms. Burner orchestrated a game, and stated it to be an

11  annual "tradition,"  where participants attending the training meeting were asked to search

12  for a hidden Christmas tree ornament in the shape of a penis and testicles.

13      49.    Plaintiff, along with Ms. Burke, refused to participate in the "Find-the-Penis-

14  Ornament" game.

15      50.    As the only male staff member, in attendance, the Plaintiff was humiliated

16  and felt extremely embarrassed about this sexually explicit game conducted in his presence

17  during a training event. He was further surprised that the sexually explicit game would be

18  conducted during paid working hours and endorsed by Defendant.

19      51.    After the "Find-the-Penis-Ornament" game, the party continued. At the end

20  of the party, as Plaintiff reached the front door to leave, Ms. Burner approached Plaintiff

21  and asked if he had been bothered by the "Find-the-Penis-Ornament" game. Plaintiff stated

22  explicitly that he did not want it to happen again.

23      52.    In or around January of 2023, Ms. Burner was promoted to a higher level

24  supervisory position, and her previous supervisory position, Senior Services Coordinator,

25  was opened up for hire.

26      53.    In or about January of 2023, Plaintiff worked approximately 36 or 37 hours

27  during the first week of one pay period, and informed Ms. Burner that he would need to

28  work in excess of 58 hours for the pay period, given his assignments.

54.    In response, Ms. Burner again directed Plaintiff to falsify his hours by recording only 21 or 22 hours rather than the actual total Plaintiff had worked the second week of the pay period.

55.    Ms. Burner gave Plaintiff the option to record additional hours in the next pay period and work less hours the next pay period. Plaintiff did not do so.

56.    In January of 2023, Due to pressure from management, Plaintiff felt forced to write off approximately 6 or 7 hours of time, which he did not report on his timecard and for which he was not compensated.

57.    During a staff meeting in or around March of 2023, Ms. Burner intentionally humiliated Plaintiff when she stated that, during her first year on the job, she was capable of "easily handling" four schools and the tutor volunteers as a part-time employee working 29 hours per week. At the time, it was well known that the Plaintiff was the only staff member scheduled for 29 hours per week, assigned the most schools and tutors.

58.    Following the March 2023 staff meeting, Plaintiff met with Ms. Burner one-on-one and again raised his concerns about Defendant's method of calculating employees' part-time versus full-time hours, asked how Human Resources calculated the hours, and over what period of time.

59.    Ms. Burner was generally dismissive of Plaintiff's concerns and failed to recognize the difference between Plaintiff's excessive workload and the workload of female staff.

60.    On or about April 12, 2023, Ms. Burner led staff members, with their City of Tempe badges on display, to a store in Tempe Marketplace where she repeatedly and loudly yelled the word "penis" in the presence of Experience Corps staff and other shoppers. Again, Plaintiff felt uncomfortable and humiliated by the sexually inappropriate conduct.

61.    On or about May 16, 2023, during a staff outing at a restaurant/bar in Tempe to celebrate the Experience Corps new hire, Darcy Zeiger, Ms. Burner's replacement.  Only Experience Corps staff were invited, and all staff attended.

62.    During the outing, Ms. Burner initiated an approximate 10-to-15-minute

verbal exchange with the female staff members comparing different parts of male genitalia, to the appetizers and food ordered brought to the table by the wait staff, referencing "balls" repeatedly, and making vulgar, sexually explicit remarks about the look of the food and the eating and swallowing of the food.

63.     During the conversation, Plaintiff stated to Ms. McNally, "this is getting old" to which Ms. McNally responded, "now you know what it's like to be a woman."

64.     On one occasion later in the Spring semester of 2023, Ms. Burner asked Plaintiff to come into her office alone. She shut the door and asked Plaintiff what guys were looking for from dating sites. Plaintiff had a girlfriend at the time, and did not feel comfortable with the conversation, so he excused himself and left.

65.     In or around May of 2023, Plaintiff reported multiple concerns to Ms. Zieger in their weekly individual meetings, including, again his payroll questions and concerns.

66.     Plaintiff informed Ms. Zeiger that despite several discussions, Ms. Burner had failed to follow up with an answer to his questions regarding full-time and part-time employee classification questions and how Defendant calculated employee hours.

67.     Prior to June 9, 2023, Plaintiff expressed his concern to Ms. Zeiger that at least one staff employee had claimed to have worked over 40 hours in a work week, but was not receiving overtime pay.

68.     Plaintiff also discussed with Ms. Zeiger that since October/November, Kimberly Carpenter's Site Specialist position, which he believed to be funded, was unfilled.

69.     Upon information and belief, Ms. Zeiger reported Plaintiff's concerns to Ms. Burner, her superior.

70.     On or about June 9, 2023, Ms. Burner sent a memorandum to all staff, instructing employees to sign off on the directive not to exceed their assigned hours during any given week. The letter failed to address Plaintiff's ongoing specific pay calculation and the part-time/full-time concerns in the letter.

71.     Plaintiff informed Ms. Zeiger of his intention to meet with Human

Resources, to get answers to his questions, to which Ms. Zeiger responded, asking if she could instead relay his intention to Ms. Burner. Plaintiff responded that she could.

72.     Approximately three (3) days later, on or about June 12, 2023, Plaintiff was contacted by Ms. Burner, who attempted to deter Plaintiff from meeting with Human Resources, stating that it would not "look good" to Ms. Burner's supervisor if Plaintiff went to Human Resources.

73.     Despite Ms. Burner's attempts to dissuade Plaintiff from reporting to Human Resources, and after three (3) separate attempts at discussions on hours calculations with Ms. Burner, and not receiving a complete response, Plaintiff complained to Human Resources in or around June of 2023 about the inconsistencies and inaccuracies in Defendant's hourly pay period calculations.

74.     On or about the morning of June 16, 2023, Plaintiff emailed Human Resources Senior Analyst, Elva Rios-Chavez, listing his workplace concerns. Ms. Burner was copied on the Plaintiff's email.

75.     Later the same day, on or about June 16, 2023, Plaintiff met with Ms. Rios-Chavez who informed Plaintiff that the practice of inputting false or incorrect hours and averaging hours over two pay periods and within pay periods was not a permitted practice. Ms. Rios-Chavez stated that employees were required to enter the accurate number of hours worked each day.

76.     During their meeting, Plaintiff also informed Ms. Rios-Chavez that Ms. Heath had exceeded 40 hours a week and that one other 40 hour per week staff member had told Plaintiff that she was unable to complete her work in the allotted 40 hours per week. Ms. Rios-Chavez indicated that she would investigate Plaintiff's concerns.

77.     Out of growing concern for Defendant's approach to the investigation and fear of retaliation based upon Ms. Burner's comments to him, Plaintiff felt pressured to withdraw his complaints to Human Resources. He emailed Ms. Rios-Chavez and copied Ms. Burner to that effect on or about the afternoon of June 16, 2023.

78.     During June of 2023, Plaintiff volunteered to co-manage summer school with

Ms. Heath. No other employees volunteered. Additionally, Plaintiff volunteered to help his colleagues with the data input and troubleshoot input errors in order to meet their July 1, 2023 deadline.

79.     On or about June 28, 2023, Plaintiff attended his weekly meeting with Ms. Zeiger, and was surprised at Ms. Burner's presence. During the meeting, Ms. Burner stated that she was "offended" that Plaintiff had gone to Human Resources to report her illegal conduct, and stated that by doing so, Plaintiff had made himself into a "pariah" among Experience Corps staff and claimed that the staff "need to be careful about what [they] say around [Plaintiff]."

80.     Ms. Burner further blamed Plaintiff and cited him as the reason for having to write the June 9, 2023 email, changing her current practice of allowing staff to falsify hours.

81.     Ms. Burner further told Plaintiff "how would you like it if I went to HR about you," and listed false allegations against Plaintiff, which Plaintiff understood to be a further threat.

82.     During the same meeting, Ms. Burner again admitted to asking Ms. Heath to eliminate her overtime hours and not enter those hours on her timecard.

83.     Ms. Burner also alleged that Plaintiff made Ms. Alvarez feel uncomfortable because Plaintiff had alleged asked about the difference in benefits between part-time and full-time hourly.

84.     Ms. Burner ended the meeting by reading a statement to Plaintiff, restricting his future conversations with other staff members regarding employee benefits or FLSA-related issues and concerns, otherwise he would be asked to resign.

85.     On or about August 17, 2023, Ms. Bell began to openly and loudly chastise Plaintiff in the conference room at the Tempe Library in the presence of three colleagues. Plaintiff raised his hands in a defensive gesture, saying "whoa." Ms. Bell did not back down but continued to humiliate and berate Plaintiff for a task that Ms. Zeiger had directed Plaintiff to perform.

86.     Ms. Zeiger thereafter scheduled a "mediation" between Plaintiff and Ms.

Bell. Ms. Bell insisted her friend and former Supervisor and Ms. Zeiger's current Supervisor, Ms. Burner, attend the meeting. Ms. Bell accused Plaintiff of being "physically offensive" by raising his hands and saying "whoa" while she was yelling at him.

87. Plaintiff believed the allegations were made in further retaliation for his complaints to Human Resources.

88. On or about the following week, Ms. Bell filed a complaint against the Plaintiff, which Plaintiff believes was in retaliation for his complaints to Human Resources.

89. On or about August 30, 2023, Plaintiff sent a formal complaint via email to Defendant's Human Resources department, and several supervisors and managers outlining the ongoing discrimination and retaliation he had faced working in Experience Corps.

90. On or about September 9, 2023, Plaintiff sent a second email directed to Ms. Burner, Ms. Chavez, Ms. Raymond and Mr. Keith Burke, Deputy City Manager, as he had not yet received a response to his first email.

91. On or about September 15, 2023, Plaintiff attended a meeting with Ms. Rios-Chavez and Adrianne Ward of Human Resources, presumably to discuss his complaints. The meeting lasted approximately an hour and a half.

92. Four days later, on or about September 19, 2023, Defendant terminated Plaintiff's employment during a meeting with Marie Raymond, Ms. Burner's supervisor, and Rebecca Strisco, Director of Human Resources.

93. Defendant's alleged basis for Plaintiff's termination was that Plaintiff had permitted a student to touch Plaintiff's hair, within the Experience Corps rules, of which Plaintiff's supervisor, Ms. Zeiger had been made aware of during the timeframe it occurred, approximately four to seven months prior. On their visit to Scales Elementary School, both Ms. Burner and Ms. Zeiger had been complimentary of the Plaintiff's and tutor's creative learning and incentive approach for the student.

94. Upon information and belief, following the September 15th meeting, a

salacious story was fabricated collaboratively between Ms. Ward and Ms. Rios-Chavez in an effort to punish and humiliate Plaintiff, in further retaliation for his complaints.

95.    At the time of his termination, Plaintiff was 69 years old and was the only male employee on the Experience Corps Tempe team throughout his paid tenure with Defendant.

96.    Despite Ms. Raymond's explanation to Plaintiff that he was being fired for granting a student's request touch his hair four to seven months prior, and alleging that Plaintiff was "a risk," it was later discovered that Ms. Ward and Ms. Rios-Chavez both emailed Ms. Raymond alleging Plaintiff had admitted that teaching students turned him on and this alleged admission was the reason Plaintiff was terminated.

97.    Plaintiff vehemently denies these allegations from Ms. Ward and Ms. Rios-Chavez.

98.    Upon information and belief, Ms. Ward and Ms. Rios-Chavez lied in order have Plaintiff was fired.

99.    Notably, Ms. Raymond elected not to tell Plaintiff the apparent reason for firing him.

100.    Defendant's stated reasons for Plaintiff's termination are pretextual in nature, and the true reasons for Plaintiff's termination were motivated by Plaintiff's sex, age, and in retaliation for Plaintiff's complaints of inaccurate and unfair payroll practices.

101.    Further, Defendant has not made a good faith effort to comply with the FLSA, and its violations were intentional.

**Exhaustion of Administrative Remedies**

102.    Plaintiff timely filed his charge of discrimination on the basis of sex with the United States Equal Opportunity Commission ("EEOC"), charge number 540-2024-01525.  A true copy is attached as **Exhibit 1** and incorporated herein by reference pursuant to Federal Rules of Civil Procedure, Rule 10(c).

103.    The EEOC/United States Department of Justice notice of right to sue for charge number 540-2024-01525 was issued on June 28, 2024. A true copy is attached as

**Exhibit 2** and incorporated herein by reference pursuant to Federal Rules of Civil Procedure, Rule 10(c).

104.    This action was filed within ninety (90) days of the EEOC's issuance of the notice of right to sue (**Exhibit 2**).

**CLAIMS FOR RELIEF**

**Count I: Discrimination Based on Sex in Violation of**

**Title VII of the Civil Rights Act of 1964**

**(42 U.S.C. §§ 2000e et al.)**

105.    Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs.

106.    Plaintiff was at all times qualified for his position with Defendant.

107.    Plaintiff, the only male employee on his team, was subjected to discriminatory comments of a sexually explicit nature by Defendant and regularly assigned a heavier schedule than his similarly situated female colleagues.

108.    Plaintiff was regularly berated, humiliated and chastised by Defendant's management as detailed above, while similarly situated females were treated more favorably.

109.    Defendant terminated Plaintiff and intentionally fabricated reasons for Plaintiff's termination which were false.

110.    Defendant's unlawful conduct was motivated at least in part by Plaintiff's sex, which is male.

111.    Plaintiff suffered damages as a result of Defendant's unlawful actions towards Plaintiff, including severe emotional distress, physical distress, past and future lost wages and benefits, attorneys' fees and costs incurred in bringing this action.

112.    Defendant intentionally violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964, with malice or reckless indifference, and as a result, is liable for punitive damages.

///

## Count II: Retaliation in Violation of Title VII

### (42 U.S.C. §§ 2000e et al.)

113.    Plaintiff incorporates by reference the allegations contained in the forgoing paragraphs.

114.    Plaintiff engaged in a protected activity by complaining of sex discrimination to Defendant's managers and Human Resources as described above.

115.    As detailed above, Plaintiff engaged in a protected activity under Title VII by complaining to Defendant of harassment and discrimination based upon his sex, voicing his complaints regarding sexually explicit activity in the workplace.

116.    Plaintiff's protected activity was a motivating factor in Defendant's decision to terminate Plaintiff.

117.    Defendant further discriminated against Plaintiff when Defendant falsely alleged misconduct on the part of Plaintiff, and falsified grounds for Plaintiff's termination, based upon his sex.

118.    Plaintiff has suffered damages as a result of Defendant's retaliatory and unlawful actions, including severe emotional distress, physical distress, past and future lost wages and benefits and the attorneys' fees and costs incurred in bringing this action.

119.    Defendant intentionally violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964, with malice or reckless indifference, and as a result, is liable for punitive damages.

## Count III: Age Discrimination in Violation of the ADEA

120.    Plaintiff incorporates by reference the allegations contained in the forgoing paragraphs.

121.    Plaintiff is an individual over the age of forty (40) to whom the ADEA applies.

122.    The acts, policies and practices of Defendant, as alleged herein above, violate the Age Discrimination in Employment Act ("ADEA") as amended, and created a discriminatory and hostile work environment for Plaintiff.

123.    Defendant willfully and intentionally discriminated against Plaintiff, as alleged herein above, on the basis of his age, and created a hostile work environment for Plaintiff.

124.    Plaintiff, the oldest only male employee on his team, was subjected to discriminatory comments and regularly assigned a heavier schedule than his similarly situated female colleagues, which was motivated at least in part by Plaintiff's age.

125.    Plaintiff was regularly berated, humiliated and chastised by Defendant's management as detailed above, while similarly situated colleagues outside of Plaintiff's protected class were treated more favorably.

126.    Defendant willfully and intentionally failed to enforce discrimination and harassment policies and terminated Plaintiff because of his age.

127.    Plaintiff has suffered damages as a result of Defendant's willful conduct including lost wages, the value of benefits and lost retirement benefits, to be proven at trial.

## **Count IV: Violation of FLSA Recordkeeping Requirement**
## **(29 U.S.C. §211(c))**

128.    Plaintiff incorporates by reference the allegations contained in the forgoing paragraphs.

129.    Plaintiff, during his employment, was directed by Defendant to falsify the number of hours he worked, as detailed above.

130.    Defendant has violation provision 29 U.S.C. §211(c) of the FLSA by failing to maintain, keep and preserve records of employees and of the wages, hours and other conditions and practices of employment maintained.  Defendant has further violated this section by willfully falsifying, and directing its employees to falsify employment-related records.

131.    Defendant's violation of the FLSA was willful, and Plaintiff is entitled to a lookback of three years pursuant to 29 U.S.C.A. §255(a).

///

///

**Count V: Retaliation Under the FLSA**

**(29 U.S.C.A. §215(a)(3))**

132.    Plaintiff incorporates by reference the allegations contained in the forgoing paragraphs.

133.    As detailed above, Plaintiff engaged in protected activities under the FLSA by complaining to Defendant of FLSA violations on or about June 16, 2023.

134.    Plaintiff's protected activit(ies) were a motivating factor in Defendant's decision to terminate Plaintiff.

135.    Defendant has willfully violated the anti-retaliation provision of the FLSA (29 U.S.C.A. §215(a)(3)) by terminating Plaintiff's employment in retaliation for his complaints of Defendant's ongoing violations of the FLSA.

136.    As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered lost wages, loss of benefits, emotional distress, embarrassment, and other economic and non-economic losses in an amount to be proven at trial.

137.    Defendant's conduct in taking adverse action against Plaintiff's employment was done with ill will, spite, malice and with complete indifference to Plaintiff's rights.

**Count VI: Violation of Title IX**

**(20 U.S.C. §1681(a))**

138.    Plaintiff incorporates by reference the allegations contained in the forgoing paragraphs.

139.    20 U.S.C. §1681(a) provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance…"

140.    Defendant operates Experience Corps, AARP Foundation, and is, upon information and belief, a recipient of federal funding.

///

///

141.    As detailed above, Plaintiff was discriminated against and subjected to harassing conduct, unwelcome comments and a hostile work environment based upon his sex.

142.    Plaintiff complained of the ongoing discrimination to Defendant's management and Defendant had actual knowledge of the sex-based discrimination against Plaintiff.

143.    Defendant further discriminated against Plaintiff when Defendant falsely alleged misconduct on the part of Plaintiff, and falsified grounds for Plaintiff's termination, based upon his sex.

**Demand for Trial by Jury**

144.    Plaintiff demands a trial by jury on all claims pursuant to the U.S. Constitution Seventh Amendment, FRCP Rule 38, and 42 U.S.C. 1981a(c)(1).

**Prayer for Relief**

Plaintiff requests the following relief against all Defendants in connection with her Complaint:

A.  Judgment in favor of Plaintiff and against Defendants on all claims;

B.  Award of past and future lost wages, and benefits, plus interest;

C.  Statutory, compensatory, consequential and nominal damages;

D.  Liquidated damages;

E.  Punitive damages;

F.  Accrued and accruing pre- and post-judgment interest at the statutory rates;

G.  Plaintiff's attorneys' fees and costs; and

H.  Such other relief as the Court deems proper.

**RESPECTFULLY SUBMITTED** this 20th day of September, 2024

By: */s/ Anjali J. Patel*
Anjali J. Patel
*Attorneys for Plaintiff Steven Bartel*

18

**Attached Exhibits**

**1. EEOC charge**

**2. Notice of Right to Sue**