# EXHIBIT A

| EEOC Form 5 (11/09) | | |
|---|---|---|
| **CHARGE OF DISCRIMINATION**<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s): |

_____ and EEOC
*State or local Agency, if any*

| Name (Indicate Mr., Ms., Mrs.)<br>Mr. Steven Bartel | Home Phone (Incl. Area Code)<br>(847) 951-7168 | Date of Birth<br>09/30/1953 |
|---|---|---|
| Street Address<br>1033 W 12th St. | City, State and ZIP Code<br>Tempe, AZ 85281 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two are named, list under PARTICULARS below.)*

| Name<br>City of Tempe | No. Employees, Members<br>500+ | Phone No. (Incl. Area Code)<br>(480) 858-2466 |
|---|---|---|
| Street Address<br>715 W 5th St. | City, State and ZIP Code<br>Tempe, AZ 85281 | |

| DISCRIMINATION BASED ON: | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN<br>☒ RETALIATION ☐ AGE ☐ DISABILITY ☐ GENETIC INFORMATION<br>☐ OTHER (Specify) | Earliest: 09/2022  Latest: 09/19/2023<br>☐ CONTINUING ACTION |

**THE PARTICULARS ARE** *(If additional paper is needed, attach extra sheet(s)):*

Mr. Bartel began working for the City of Tempe in 2019, where he started as a volunteer tutor. After demonstrated success in his role, Mr. Bartel began a paid position as Site Specialist for other tutors at several schools for the City of Tempe in August of 2022 working with Experience Corps, AARP Foundation at the rate of $24.00 per hour for twenty-nine (29) hours per week, which was considered a part-time position. Mr. Bartel is seventy (70) years old, and was the only male employee on his team. During his tenure, Mr. Bartel did not receive any performance-related discipline or write-ups. To the contrary, he was the first tutor from Tempe to receive to be named the Tutor of the Month in the National AARP/Experience Corp newsletter.

The difference in how Mr. Bartel was treated by his coworkers and direct superior, Ms. Nicole Burner (former Senior Social Services Coordinator and current Supervisor in the Office of Education), began in Mr. Bartel's first month as a paid employee by the City. In September of 2022, while at a fingerprinting event, Ms. Pamela Bell, Mr. Bartel's colleague, publicly berated Mr. Bartel in front of other tutors. Disturbed and humiliated by the event, Mr. Bartel spoke with Supervisor Burner but was ignored.

The fingerprinting event was not an isolated incident, and over the course of the next year Ms. Bell – who often proudly boasted that Ms. Burner was her best friend – would go on to publicly berate Mr. Bartel, on two other separate occasions occurring on February 6, 2023 and August 17, 2023. Neither during nor after the February 6th incident did Ms. Burner, intercede on Mr. Bartel's behalf. None of Mr. Bartel's female colleagues were subjected to similar treatment, and Ms. Bell was not permitted to disrespect any other member of the team as she did Mr. Bartel.

During his tenure, Mr. Bartel became concerned about how his 29 hours were calculated for part-time classification, and how the full-time 30 hours were calculated. Specifically, Mr. Bartel was told by Ms. Burner in or around late August or early September that he was not to exceed 58 hours maximum for the two-week pay period (29 hours per week). When Mr. Bartel needed to work more hours to complete the new school year startup, he was told by Ms. Burner to only to input 58 hours for the current pay period rather than the number of hours he had actually worked, and then to work less the following pay period to make up for it.

In January 2023, Mr. Bartel raised the concern again. He had already worked 37 hours in the first week of a pay period and would need to work in excess of 58 hours for the pay period. He did work in excess of 58 hours that pay period, and relayed same to Ms. Burner.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State or Local Agency Requirements<br><br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>12/22/2023  *[signed] Steven Bartel*<br>Date  Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

EEOC Form 5 (11/09)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | and EEOC |

State or local Agency, if any

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

After a discussion and as directed by Ms. Burner, Mr. Bartel entered only 22 hours, and not the correct total hours he had worked that week. He was given the option to move the additional hours worked during that pay period to the next pay period and work less hours that week. He did not do so.

Around approximately the same time, Mr. Bartel raised a concern about the 29-hour part-time designation ver30-hourhour full-time designations during a one-on-one meeting with Ms. Burner. Mr. Bartel asked Ms Burner, specifically, how full-time and part-time hours were calculated and over what period of time the calculation was used to determine part-time or full-time status. Ms. Burner said that she would research the issue and get back to Mr. Bartel, but failed to do so.

Not only was Mr. Bartel instructed by management to falsify the hours he worked, but it became obvious to Mr. Bartel by March 2023, that there was a significant discrepancy in the scheduling and workload between himself and his similarly-situated female colleagues. From January through May 2023, Mr. Bartel, a part-time employee, had been scheduled for 29 hours per week since his employment. However, Mr. Bartel was assigned a total of more than 22 tutors to monitor and assist while his female colleagues were assigned a significantly lesser workload, both in number of schools serviced and number of tutors, including the Lead Site Specialist. For the Fall 2023 semester, Mr Bartel was again assigned significantly more tutors than all other Site Specialists. New for the fall 2023 semester was that each tutor would be responsible for entering their tutors' students' data, which added approximately ten hours per week of additional work for more than 90 students, with Mr. Bartel assigned the most tutors, who each had about four (4) students.

Mr. Bartel's excessive workload for the fall 2023 semester was specifically noted by Ms. Zeiger. She recognized that Mr. Bartel's workload needed to be reduced a month or so prior to her resignation. Over the calendar year of 2023, Mr. Bartel was expected to service more schools, more tutors and indirectly, more students than all other Site Specialists. If calculated on a weekly basis, Mr. Bartel's student and tutor responsibilities would also significantly exceed that of the Lead Site Specialist (who works 40 hours per week) versus Mr. Bartel (29 hours per week). Direct engagement of senior citizens is the most important and the most aligned to the mission of Experience Corps, AARP Foundation and its connection to the City of Tempe.

On December 14, 2022, Mr. Bartel attended a lunch meeting at the home of coworker Karen McNally. The meeting was both a training and a holiday party, which included a "Secret Santa" gift exchange and several games. One of these games – an alleged "tradition," was to find a hidden Christmas tree ornament shaped as a penis and testicles. As the only male on the staff, Mr. Bartel felt uncomfortable and chose not to participate. The game was orchestrated by Ms. Burner, who approached Mr. Bartel near the end of the party to ask if he had been bothered by the "Find the Penis Ornament" game. Mr. Bartel stated that he did not want it to happen again.

Of everyone present at the meeting, Mr. Bartel and Ms. Allison Burke were the only individuals who declined to participate. Those who participated in the game were City of Tempe, Experience Corps, AARP Supervisor Nicole Burner, Candice Heath, Rebecca Alvarez and Pamela Bell. Ms. McNally's role in the game was to hide the penis and testicle ornament. Notably, Experience Corps, AARP Regional Representative, Peggy Goldberg also actively participated in the game.

In January or February 2023, Ms. Burner was promoted. Her previous position, Senior Services Coordinator, a supervisory position, would report to Ms. Burner.

Ms. Burner once again displayed inappropriate behavior a few months later on April 12, 2023, when she lead the team to the Cost Plus World Market Store in Tempe to shop for gifts to honor some of the tutors. Ms. Burner thought it would be funny to loudly say the word "penis" in public, and did so repeatedly in the presence of customers. All team members were wearing their Tempe City badges, and the store had customers present. During the shopping trip, Ms. Burner began yelling the word "penis" so loudly that Mr. Bartel could hear her from four (4) aisles away. Once again, all staff seemed to be encouraging Ms. Burner's repugnant behavior except for Mr. Bartel and Ms. Burke.

On May 16, 2023, the staff went to Bar Louie in Tempe Marketplace to celebrate the onboarding and birthday of the new incoming Senior Social Services Coordinator, Ms. Darcy Zeiger, Ms Burner's replacement. Only staff from Experience Corps were invited to the event. During the outing, Ms. Burner initiated what turned out to be a 15-minute conversation with the female staff about male genitalia, referencing "balls" repeatedly, and making vulgar, inappropriate remarks about food that resembled testicles. Others, with the exception of Mr. Bartel and Ms. Burke, were laughing and encouraging each other. At one point, Mr. Bartel turned to Ms. McNally and said, "This is getting old." Ms. McNally responded, "now you know what it's like to be a woman."

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State or Local Agency Requirements |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| | SIGNATURE OF COMPLAINANT |
| 12/22/2023 *[signature]* | |
| Date / Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | |

and EEOC

*State or local Agency, if any*

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*:

In March of 2023, Mr. Bartel had another one-on-one meeting with Ms. Burner during which he again raised the issue of the calculation of part-time positions including 29 hours per week versus the full-time 30 hours per week, how the hours were calculated and over what period of time. Also, just prior to the staff meeting, Ms. Burner humiliated Mr. Bartel by stating that when she started working for Experience Corps during her first year, some 16 or 17 years ago, she was capable of "easily handling" four schools and the schools' tutor volunteers as a part-time employee working 29 hours per week. Since Mr. Bartel was the only Site Specialist working 29 hours a week with responsibilities for tutors at four schools, it was obvious and the staff was well aware that Ms. Burner was directing her sarcasm, towards the 69-year old male, Mr. Bartel. Despite this instance, in their following one-on-one meeting, Ms Burner was generally dismissive of Mr. Bartel's workload concern, and failed to see the difference between Mr. Bartel's excessive workload and the workloads of the other female staff.

After Ms. Zeiger began her new position as Senior Social Service Coordinator, Mr. Bartel voiced concerns to her in May and the beginning of June 2023, regarding issues with overtime pay and questions of how the payroll department was calculating his 29-hour work week and over what period of time it was calculating the average hours per week.
Mr. Bartel told Ms. Zeiger that he had discussed the issues on several occasions with Ms. Burner, and that Ms. Burner had not followed up with him with the answers to his questions. Additionally, Mr. Bartel was concerned that employees were being permitted to enter false numbers of hours over a pay period and make up for those hours the following pay period as he had been instructed to do himself. However, Mr. Bartel's deepest concern was that two staff members, Ms. Heath and Ms. McNally had previously informed Mr. Bartel that they had been working over forty (40) hours in a week, and had not been paid for overtime hours.. These issues all discussed with Ms. Zeiger, Mr. Bartel's new supervisor.

Concerned, Ms. Zeiger reported Mr. Bartel's concerns to Ms. Burner, her superior. On June 9, 2023, Ms. Burner sent a memorandum to all staff directing employees to sign off on the directive that they were not to exceed their hours in any given pay period. Ms. Burner's memorandum still failed to address Mr. Bartel's concerns about the calculation of part-time his 29 hour per week employees – the specific lookback period for the hours per week used for the calculation. Mr. Bartel then told Ms. Zeiger he was going to request a meeting with Human Resources to get to the answer to that question specifically, among other questions. Ms. Zeiger asked Mr. Bartel if she could tell Ms. Burner that he was planning to go to Human Resources and he responded that she could.

Three days later on June 12, 2023, Ms. Burner reached out to Mr. Bartel directly to address his concerns. In doing so, Ms. Burner attempted to deter Mr. Bartel from reporting his complaint to Human Resources, letting him know that she would "be informed" if he did so. Ms. Burner further admitted to telling Ms. Candice Heath not to report the overtime hours she had worked – a violation of Arizona and federal law. Also, she still could not answer the specific look-back period of time for calculating the 29 or 30 hours per week average, used to determine an employee's part-time or full-time.

Despite Ms. Burner's comments, Mr. Bartel emailed and met with Elva Rios-Chavez from Human Resources on June 16, 2023. Mr. Bartel was clear that he did not want anyone to get in trouble, only that the law was followed and for answers to his questions. Ms. Chavez stated she would investigate and made it very clear that she was "representing the City." Out of concern for how HR would proceed with their investigation, and out of fear of retaliation, Mr. Bartel felt pressured to withdraw his concern and thereafter emailed Ms. Chavez and Ms. Burner to that effect the day on June 16, 2023.

Additionally, during the meeting with Ms. Chavez, Mr. Bartel specifically asked whether the practice of inputting false hours for a work week to be averaged over a pay period or between pay periods was a permissible practice, which Ms. Burner had directed him to do when he had exceeded 29 work hours in a week. Ms. Chavez told him that such practices were not permitted and that employees were required to enter the accurate number of hours worked.

Shortly thereafter, on June 28, 2023, Mr. Bartel attended his weekly meeting with Ms. Zeiger. Surprisingly, Ms. Burner was present for the meeting. The primary subject of this meeting was Mr. Bartel's prior meeting with HR. Because he met with HR, Ms. Burner claimed

---

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

12/22/2023
*Date*            *Charging Party Signature*

NOTARY – *When necessary for State or Local Agency Requirements*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(month, day, year)*

EEOC Form 5 (11/09)

**CHARGE OF DISCRIMINATION**

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | and EEOC |

State or local Agency, if any

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

Mr. Bartel had made himself into a "pariah" and stated that "we need to be careful about what we say around you." She further said she was "offended" that Mr. Bartel had gone to Human Resources to report her illegal conduct, and once again, admitted to asking Ms. Heath to eliminate her overtime hours before submitting her timecard. She also blamed Mr. Bartel and cited him as the reason for having to write the June 9, 2023 email, changing her current practice of allowing staff to falsify hours worked per week or pay period. She further stated, "how would you like if it I went to HR about you," and listed two false allegations against Mr. Bartel, clearly intended as a threat.

Lastly, Ms. Burner brought up a conversation Mr. Bartel had with Ms. Alvarez during which she alleged he made her feel uncomfortable when asking about the benefits of "full-time" employment with the City for temporary employees. Because of this, Ms. Burner read a statement at the end of the meeting saying to Mr. Bartel that she would be restricting his conversations with other staff members regarding employee benefits or anything remotely related to FLSA, otherwise he would be asked to resign. Shortly after the meeting, Mr. Bartel received a confirmation email from Ms. Zeiger confirming the main points of the restrictions placed upon him, and asking him confirm agreement with the restrictions.

On July 5, 2023, the week after his meeting with Ms. Zeiger and Ms. Burner, Mr. Bartel ran into Ms. Alvarez. He apologized if he had made her feel uncomfortable in any way for their previous conversation. In response, Ms. Alvarez expressly stated to Mr. Bartel "you had not made me feel uncomfortable in any way, and that she had been approached by Ms. Burner earlier and been told she needed to "be careful" of what she shared with Mr. Bartel. Ms. Alvarez further stated that Ms. Burner had approached Ms. Heath with the same warning.

On July 12, 2023, Mr. Bartel met with Ms. Zeiger, because he wanted Ms. Zeiger to know that Ms. Alvarez had stated Mr. Bartel had not made her feel uncomfortable, as Ms. Burner had claimed, and that Ms. Burner was telling staff to be careful about what they stated around him, particularly involving hours, overtime and benefits. Prior to Mr. Bartel's meeting, Ms. Alvarez met with Ms. Zeiger and stated that though she had felt comfortable in the earlier conversation with Mr. Bartel prior to July 5, she now felt uncomfortable about their conversation.

Because of conflicting statements between Mr. Bartel and Ms. Alvarez at their July 12, 2023, individual weekly meetings, Ms. Zeiger scheduled a mediation between the two on July 19, 2023. During the mediation, surprisingly, Ms. Alvarez appeared to change her story multiple times, and openly admitted that if asked whether Ms. Burner told her to be careful of what she says around Mr. Bartel, that she would deny it. She went on to say that she had not seen or communicated with Ms. Burner in any way since prior to July 5, 2023 which was false.

On or about July 25, 2023, the staff (with the exception of Ms. Burner) attended their most recently scheduled harassment training for all City of Tempe employees. Despite the training's coverage of everything that had happened to Mr. Bartel, nobody attempted to apologize to Mr. Bartel for their prior actions.

Less than a month later, on August 17, 2023, Mr. Bartel was again subjected to aggressive treatment by Ms. Bell. Despite Mr. Bartel having asked Ms. Bell on numerous occasions to be less demeaning towards him, Ms. Bell once again began chastising him for something Darcy Zeiger, their immediate supervisor, had asked him to do. Out of defense, he raised his hands to his chest, and said "whoa", feeling that he was being attacked. Ms. Bell did not back down and continued to berate and humiliate Mr. Bartel. In the past, when Mr. Bartel had put up his hands and said "whoa" to Ms. Bell's treatment, she would stop. Ms. Zeiger scheduled a mediation on August 22, 2023, between Ms. Bell and Mr. Bartel. However, Ms. Bell requested that Ms. Burner – her best friend and Ms. Zeiger's superior – be present during the mediation. Mr. Bartel expressed that he felt it was inappropriate for Ms. Burner to be involved, but Ms. Burner included herself nonetheless.

During the mediation, Ms. Burner claimed that Mr. Bartel's hand-raising to his chest, palms facing out, and saying "whoa," was "physically offensive." An outcome was reached during the mediation that Mr. Bartel and Ms. Bell would agree on a signal Mr. Bartel would use to communicate to Ms. Bell when she had gone too far – a common occurrence for Ms. Bell over the past year.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

12/22/2023 [signature]
Date / Charging Party Signature

NOTARY – When necessary for State or Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

EEOC Form 5 (11/09)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | |

and EEOC

*State or local Agency, if any*

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*:

On August 30, 2023, during Mr. Bartel's weekly meeting with Ms. Zeiger, she told him Ms. Bell inexplicably reneged on the agreement reached in mediation and filed a complaint against Mr. Bartel for verbal abuse.

Later that same day, August 30, 2023, Mr. Bartel sent an email outlining all of his complaints to Ms. Burner, Ms. Chavez of Human Resources, and Ms. Marie Raymond (Manager of the Office of Education and Ms. Burner's superior). By August 31, 2023, Ms. Darcy Zeiger had given notice of her resignation.

By September 9, 2023, Mr. Bartel had not received a response to his email of August 30, 2023 email, and sent a second email to Ms. Burner, Ms. Chavez, Ms. Raymond, and added Mr. Keith Burke, Deputy City Manager, and Ms. Raymond's supervisor.

On September 15, 2023, Mr. Bartel met with Rios-Chavez and another HR representative to discuss his complaint.

Ms. Chavez scheduled a follow-up meeting with Mr. Bartel for September 19, 2023, stating she had some additional questions to ask him. When Mr. Bartel arrived, he was directed into an office with the Director of Human Resources, Ms. Rebecca Strisco and Ms. Marie Raymond, Ms. Burner's superior. Ms. Chavez was not present. At the meeting, Ms. Raymond informed Mr. Bartel that his employment was "over immediately" and not to return to his office. She further stated that he could not return to his office to collect his personal items, and that someone else would find and handle his personal items for you. She further stated to Mr. Bartel was believed to be "a risk" to the City because he had let a male second-grade student touch his hair four (4) months prior after the student had asked to do so, which was the sole reason for Mr. Bartel's termination.

In fact, the hair-touching incident had involved a student whom Human Resources was unable to properly identify by name, and took place with Mr. Bartel's direct supervisors, Ms. Zeiger and Ms. Burner in attendance during the student's scheduled time on May 9, 2023. The student in question had been voted by second grade teachers as the most-improved in reading for the school year under Mr. Bartel's direction. Both of Mr. Bartel's immediate supervisors along with the student's volunteer tutor, Ms. Theresa James, were also present during the hair-touching incident. No suggestions of impropriety were ever communicated to Mr. Bartel during or after the incident by Ms. Burner or Ms. Zeiger.

During the termination meeting, Ms. Strisco further informed Mr. Bartel that she had heard that Mr. Bartel "enjoy[s] getting hugs." Ms. Raymond concluded her firing of Mr. Bartel by letting him know the City of Tempe still had not begun its investigation into Mr. Bartel's claims made three weeks prior in his August 30, 2023 complaint email.

Throughout his successful 28-year career in teaching elementary-aged students, Mr. Bartel has never been accused of improper conduct with a student or otherwise. During his three-year tenure as a volunteer with Experience Corps, AARP Foundation and the City of Tempe, he received only the highest written performance evaluations, and more specifically, the highest evaluations across all categories involving student interactions. Mr. Bartel's individual performance evaluations were assessed, completed and/or signed by Ms. Julie Fellows, former Experience Corps, AARP Site Specialist and former City of Tempe employee who also reported to Ms. Burner when she worked for the City of Tempe. Mr. Bartel replaced Ms. Fellows as a newly hired Site Specialist in August of 2022.

Based upon Mr. Bartel's history of demonstrated success in his field, it is clear that the outrageous and unsubstantiated allegations against him were made solely in retaliation for his complaints to Human Resources, and failure to "fit in" or tolerate the offensive and vulgar work environment promoted by the Experience Corps/AARP Group, the Tempe's Education Services Division and supervisors in the City of Tempe.

---

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

12/22/2023

*Date* / *Charging Party Signature*

NOTARY – *When necessary for State or Local Agency Requirements*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(month, day, year)*

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging party and respondent and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.