Anjali J. Patel SBN 28138
Christina Locher SBN 027472
**Tyler Allen Law Firm, PLLC**
4201 North 24th Street, Suite 200
Phoenix, AZ 85016
Phone: (602) 456-0545
Fax: (602) 995-3999
anjali@allenlawaz.com
christina@allenlawaz.com
*Attorneys for Plaintiff Steven Bartel*

Eric C. Anderson SBN 016114
Sarah R. Anchors SBN 025344
Matthew J. Mansfield SBN 024046
**Tempe City Attorney's Office**
21 E. Sixth Street, Suite 201
P.O. Box 5002
Tempe, Arizona 85280
Phone: (480) 350-8227
Fax: (480) 350-8645
Cityattorney_administrator@tempe.gov
Sarah_Anchors@tempe.gov
Matthew_Mansfield@tempe.gov
*Attorneys for Defendant City of Tempe*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Steven Bartel,<br>　　　　　　Plaintiff,<br>v.<br>The City of Tempe, an Arizona Municipal Corporation,<br>　　　　　　Defendant. | No. **2:24-CV-02519-MTM**<br><br>**JOINT CASE MANAGEMENT REPORT**<br><br>Date:　　May 30, 2025<br>Time:　　2:00 p.m.<br>Courtroom: 304<br>Before:　Hon. Michael Morrissey |

Pursuant to Federal Rule of Civil Procedure 26(f) and the Court's April 23, 2025 Order Setting Rule 16 Case Management Conference [Dkt. 25], Plaintiff Steven Bartel and Defendant The City of Tempe, (jointly referred to herein as the "Parties"), by and through counsel undersigned, hereby submit their Joint Case Management Report, as follows:

**1.  The parties who attended the Rule 26(f) meeting and assisted in developing the Case Management Report.**

Counsel Anjali J. Patel and Christina M. Locher attended on behalf of Plaintiff Steven Bartel and assisted in developing the case management report.

Counsel Sarah R. Anchors and Matthew J. Mansfield attended on behalf of Defendant City of Tempe and assisted in developing the case management report.

**2.  Service.**

All parties have been served.

**3.  A short statement of the nature of the case (3 pages or less).**

**Plaintiff's Statement:**

This is an employment discrimination and retaliation case brought by Plaintiff Steven Bartel against his former employer, the City of Tempe, under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Fair Labor Standards Act ("FLSA"). Plaintiff alleges that he experienced sex discrimination, a hostile work environment, and retaliation during his employment, which culminated in his wrongful termination in September 2023. Defendant denies these allegations and contends that Plaintiff was terminated for legitimate, non-discriminatory reasons.

Plaintiff, who has over thirty (30) years of teaching experience in Arizona, first worked for Defendant as a volunteer tutor while in his sixties for Defendant's Experience Corps AARP Foundation. Defendant formally Plaintiff hired as a part-time employee in August of 2022. Plaintiff received awards and recognition for exceptional performance during his employment, but as the sole male tutor in Experience Corps, experienced publicly belittling and demeaning behavior by his female supervisors, and was repeatedly subjected to overtly sexual and explicit behavior by his female colleagues. Plaintiff repeatedly complained about these behaviors to Defendant's management and Human Resources department.

In addition to the sexually explicit behaviors by female management and coworkers, Plaintiff was regularly overloaded and assigned a disproportionate workload as compared to

his peers, including Defendant's full-time tutors, despite the fact that Plaintiff was designated as a part-time, 29-hour-per-week employee. Plaintiff was also directed by Defendant to falsify the number of hours he worked per week, in violation of the FLSA, and reported FLSA violations to Defendant on June 16, 2023. Plaintiff was further aware of at least one (1) of his colleagues reporting fewer hours than what they had actually worked, due to pressure from Defendant.

On June 28, 2023, Plaintiff's supervisor told him she was "offended" that he had reported to Human Resources, telling Plaintiff he had made himself a "pariah." Following his complaints, Plaintiff experienced increased hostility, isolation and threats by management in retaliation for reporting sexual harassment and violations of wage laws.

Just two (2) months following Plaintiff's complaint to Human Resources, Defendant terminated Plaintiff's employment on September 19, 2023. In addition to the unlawful termination, Defendant fabricated accusations against Plaintiff as pretext for his termination and in an effort to punish and humiliate Plaintiff, falsely alleging that contact between Plaintiff and Plaintiff's students "*turned him on*," which they knew to be false, and citing Plaintiff's contacts with a student from seven (7) months prior to the termination, of which Defendant's management had been advised at the time and involved a student requesting to touch Plaintiff's hair. Defendant's actions were taken intentionally and maliciously, with intent to cause harm and suffering to Plaintiff, who has sustained severe emotional distress and damages as a result of Defendant's actions.

**Defendant's Statement:**

Plaintiff volunteered mentoring children through the City's AARP Experience Corp. program. In July 2022, the City hired Plaintiff as a Site Specialist in the Experience Corp as a temporary part-time employee, working 29 hours a week. He was a non-benefitted at-will employee. As a Site Specialist, Plaintiff's job included overseeing volunteers, managing and supporting tutors at multiple school locations, coordinating site schedules, tracking tutoring sessions, and participating in training and committee work.

The City denies that it ever told Plaintiff to falsify his timecard. When the Human Resources department ("HR") learned of an employee working overtime in a single incident, the situation was corrected and the supervisor was corrected. Plaintiff and his entire team were directed, in writing, to not exceed their assigned hours during any week. The City met with Plaintiff multiple times to explain that his job was 29 hours per week, and that he should not work over that amount. Plaintiff continued to ask coworkers about their hours, pay, benefits and schedules, even though his coworkers complained it was making them uncomfortable, and Plaintiff was told on or about June 28, 2023 to cease and he agreed.

Plaintiff was not given more work than others. He consistently chose to tutor children directly, even though he was told that was not his job as a site supervisor. Plaintiff was weak in data entry skills and so his female colleagues did that work (as well as other additional duties such as lesson plans, ordering supplies, trainings and scheduling).

Plaintiff met with Human Resources on June 16, 2023 to complain about hours and pay, but then withdrew his complaint. On August 17, 2023, there was an argument between Plaintiff and a colleague where Plaintiff raised his voice. In working to investigate Plaintiff's complaints, as well as a complaint by a colleague about Plaintiff, two HR employees met with Plaintiff on September 15, 2023. During that meeting, Plaintiff stated that he had a game with a student that he was tutoring: the student would guess if Plaintiff's hair was clean or dirty and would touch Plaintiff's hair. This concerned the HR employees as inappropriate conduct with a minor. Plaintiff then made a comment how he loved his job and how it turns him on when kids run up and hug him. This alarmed the HR employees. Due to the concern about Plaintiff's interactions with children and crossing boundaries in such sensitive situations, the City terminated Plaintiff's employment. The City denies there was any gender discrimination; rather, there were some interpersonal conflicts that Plaintiff had with his colleagues and supervisors. Plaintiff lacks proof that the City terminated Plaintiff for discriminatory or retaliatory reasons.

The City believes Plaintiff did not timely file suit within 90 days of receipt of the emailed right-to-sue letter from the Attorney General that the City received.

4

**4.     The jurisdictional basis for the case, describing the basis for jurisdiction and citing specific jurisdictional statutes.**

This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, for Plaintiff's Title VII and FLSA claims.

**5.     Additions and Amendments**: Whether any party anticipates adding additional parties to the case or otherwise amending the pleadings, as well as an estimation of when a party will seek to amend the pleadings;

**Plaintiff's Statement:**

Plaintiff does not intend to add any additional parties or otherwise amend the pleadings at this time. Plaintiff reserves its right to add any additional parties or amend the pleadings as necessary.

**Defendant's Statement:**

Defendant does not intend to amend the Answer unless and until evidence so requires, and reserves the right to seek to amend based on evidence it discovers.

**6.     Forthcoming Motions:** A list of contemplated motions and a statement of issues to be decided by said motions;

**Plaintiff's Statement:**

Plaintiff anticipates filing a motion for summary judgment at the close of discovery, motions in limine, and any discovery or *Daubert* motions, as needed. Plaintiff anticipates a motion for summary judgment on the issues of Title VII discrimination and retaliation, and for establishing the prima facie cases of his FLSA claims.

**Defendant's Statement:**

Defendant seeks the Court's permission to file an early summary judgment motion on the sole issue of whether Plaintiff timely filed the Complaint considering when Plaintiff and/or his counsel received the EEOC/AG right-to-sue letter. Considering this limited issue and the facts involved, allowing such an early motion would serve the interests of justice and judicial economy. Defendant also

anticipates filing a motion for summary judgment after the close of discovery based on the lack-of-merit and its affirmative defenses. Defendant anticipates filing motions in limine, and any discovery or *Daubert* motions, as needed.

7. **Related Cases.** Any actions, if any, related to this case that are currently pending before other courts, or other judges within the District of Arizona;

There are no related cases.

8. **Discovery Limitations.** Any proposed deviations from the limitations in discovery established by the Federal Rules of Civil Procedure, and an explanation as to why such changes are necessary and proportional to the needs of this case;

The Parties do not propose any deviations to the discovery limitations set forth in the Federal Rules of Civil Procedure.

9. **Electronically Stored Information.** Any issues relating to preservation, disclosure, or discovery of electronically stored information, including the parties' preservation of electronically stored information and the form or forms in which it will be produced;

The Parties agree to preserve all relevant ESI and produce documents in their native format where possible, including associated metadata. The Parties will work cooperatively to resolve any disputes regarding the scope or format of ESI production. A Rule 502(d) order will be submitted to address inadvertent disclosures of privileged or protected information.

To streamline the production of electronically stored information (ESI) in this matter, the Parties agree to the following search term protocol:

a. **Scope and Custodians**

1. To the extent relevant and proportional to the needs of the case, considering all of the factors discussed in Rule 26(b)(1), Federal Rules of Procedure, the Parties will apply the Parties' agreed-upon search terms to the ESI of custodians reasonably likely to have discoverable information, including but not limited to

Plaintiff, Plaintiff's direct supervisors, Human Resources personnel, and individuals identified in the Complaint as engaging in or witnessing the alleged discriminatory and/or retaliatory conduct. This excludes attorney-client protected communications and work product material.

2. The Parties may further narrow custodians based on roles, projects, or communications directly related to the claims.
3. Parties may also seek discovery from third parties and need not agree on search terms for such subpoenas.
4. The Defendant will seek discovery into the receipt of the EEOC/AG right-to-sue letter by Plaintiff and his counsel, which may require computer forensics exam.

b. **Search Terms**
1. The Parties will negotiate a list of search terms to be applied across relevant data sets. These terms will be crafted to balance the need for thorough discovery against the burden of overproduction.
2. The Parties agree to a phased approach, where initial terms may be refined based on document samples to reduce false positives and ensure efficiency.
3. Search terms will include reasonable variations, abbreviations, and related phrases as necessary to capture potentially responsive documents.

c. **Date Ranges and Filtering**
1. Defendant will apply date range filters to limit the volume of data to periods directly relevant to the claims, including key periods such as Plaintiff's employment dates and the timing of specific allegations.
2. The Parties agree to confer regarding any additional date restrictions as discovery progresses.

d. **Review and Iteration**
1. To the extent reasonably feasible, the Parties will produce hit reports or sampling results to allow the Parties to refine search terms iteratively, ensuring that the

production set is appropriately targeted.

2. The Parties will confer promptly regarding any disputed terms or refinements based on early production results.

e. **Privilege and Exclusions**

1. Defendant may apply privilege filters to exclude clearly privileged documents, with a corresponding privilege log to be produced.

2. The Parties agree to exclude non-relevant system files, administrative data, and other clearly irrelevant materials.

f. **Dispute Resolution**

Any disputes regarding the application or scope of search terms shall be addressed through a meet-and-confer process prior to seeking court intervention.

10. **Request for Jury Trial:** Whether a jury trial has been requested and whether the request for a jury trial is contested. If the request for a jury trial is contested, the parties shall set forth the reasons why a trial by jury is in dispute;

Plaintiff has requested a jury trial and the request is not contested.

11. **Trial:** The estimated date this matter will be ready for trial, as well as an estimation as to the length of the trial;

The Parties will be ready for trial of this matter by Monday, May 25, 2026, and anticipate that trial will take 3-4 days.

12. **Case Management Deadlines.**

A. **Mandatory initial disclosures;**

The Parties will exchange mandatory initial disclosures on or before Friday, June 6, 2025.

B. **Motions to amend the pleadings;**

The Parties will submit any motions to amend the pleadings by Friday, June 13, 2025.

C. **Service of discovery requests;**

The Parties will serve all discovery requests by Friday, November 7, 2025.

**D. Fact witness depositions;**

The Parties will complete all fact witness depositions by Friday, December 12, 2025.

**E. Close of fact discovery;**

The Parties will complete all fact discovery by Friday, December 26, 2025.

**F. Expert witness disclosures;**

Plaintiff's expert witness disclosures will be completed by Friday, January 23, 2026.

Defendant's expert witness disclosures will be completed by Monday, February 23, 2026.

Expert rebuttals will be completed and exchanged by Friday, March 20, 2026.

**G. Expert witness depositions;**

Expert witness depositions will be completed by Friday, April 10, 2026.

**H. Discovery-related motions;**

Discovery-related motions will be completed by Friday, April 17, 2026.

**I. Good-faith settlement discussions;**

The Parties will engage in good-faith settlement discussions by Friday, February 20, 2026.

**J. Dispositive motions.**

The Parties will file any dispositive motions by Friday, May 1, 2026.

13. **Ancillary Matters.** Any other issues the parties believe should be brought to the Court's attention, or that were unable to be resolved at the Rule 26(f) meeting.

No ancillary or unresolved matters.

Dated: May 20, 2025          **Tyler Allen Law Firm PLLC**

By: <u>/s/ Anjali J. Patel</u>
    Anjali J. Patel
    Attorneys for Plaintiff Steven Bartel

Dated: May 20, 2025          **Tempe City Attorney's Office**

By: <u>/s/ Anjali J. Patel (with permission)</u>
    Sarah Anchors/Matthew Mansfield
    Attorneys Defendant City of Tempe

**CERTIFICATE OF SERVICE**

    I hereby certify that on May 20, 2025, I electronically filed the foregoing with the Clerk of Court for the United States District Court, District of Arizona by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

    /s/ Anjali J. Patel